UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| SYLVESTER CANTU LOPEZ, SR., | ) ) | |
| Petitioner, | ) ) | No. CV-07-5030-LRS |
| v. | ) ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| SUPERINTENDENT JEFF UTTECHT, | ) ) | |
| Respondent. | ) ) | |

**BEFORE THE COURT** is Petitioner's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (Ct. Rec. 1), referred to herein as "§2254 Petition."[1]

## I. BACKGROUND

On May 3, 2000, a Walla Walla County Superior Court jury found the Petitioner guilty of two counts of first degree assault, two counts of second degree assault, and unlawful possession of a firearm. Petitioner appealed his convictions and in 2001, the Washington Court of Appeals reversed the unlawful possession

---

[1] There is no need for an evidentiary hearing. All of the issues presented can be and have been resolved on the basis of the state court record presented to this court. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). As to a claim regarding sufficiency of the evidence, this court's review is limited to the "record" evidence. *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853 (1993).

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 1**

of a firearm conviction, concluding that Petitioner had received ineffective assistance from his counsel. The court of appeals also vacated the Petitioner's persistent offender sentence and remanded for re-sentencing. *State v. Lopez*, 107 Wn.App. 270, 280, 27 P.3d 237 (2001). The State petitioned for review by the Washington State Supreme Court. The supreme court granted review, affirmed the court of appeals, and remanded for re-sentencing. *State v. Lopez*, 147 Wn.2d 515, 55 P.3d 609 (2002). The supreme court issued its mandate on November 5, 2002.

A new judgment and sentence was imposed on February 5, 2003, pursuant to which Petitioner is now serving 297 total months of confinement. Through counsel, Petitioner appealed the new judgment and sentence, contending the court's imposition of consecutive sentences (189 months and 108 months on the two counts of first degree assault) violated the doctrine of collateral estoppel. In an unpublished opinion filed April 22, 2004, the Washington Court of Appeals affirmed the trial court. Through counsel, Petitioner petitioned the state supreme court for discretionary review. The state supreme court denied the petition for review without comment in an order dated January 4, 2005. Thereafter, the court of appeals issued its mandate on January 21, 2005.

In October 2004, prior to the conclusion of the second direct review, the Petitioner filed a *pro se* CrR 7.8 motion in the Walla Walla County Superior Court contending the evidence was insufficient to support his convictions.[2] The trial court denied the motion and with the assistance of counsel, Petitioner took an appeal to the Washington Court of Appeals. In an order filed June 29, 2006, the court of appeals affirmed the trial court's denial of the motion. No petition for

---

[2] A CrR 7.8 motion is one for relief from judgment based on mistake, newly discovered evidence, fraud, a void judgment, or for any other reason justifying relief.

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 2**

discretionary review was filed with the state supreme court and on August 24, 2006, the court of appeals issued its mandate.

Petitioner filed a personal restraint petition with the Washington Supreme Court on November 6, 2006 claiming the evidence presented at trial was insufficient to support his convictions. On January 29, 2007, the state supreme court issued a "Ruling Dismissing Personal Restraint Petition." The ruling, issued by a supreme court commissioner, found the personal restraint petition was not an improper attempt to obtain review of the June 29, 2006 court of appeals decision affirming denial of the CrR 7.8 motion in Walla Walla County Superior Court. This was so because the court of appeals did not reach the merits of the claim, holding that insufficiency of evidence was not an issue that could be raised in a CrR 7.8 motion and that Petitioner had acknowledged as much in his appellate brief by noting that insufficiency of evidence is a subject for an appeal or a personal restraint petition. (Ex. 3 to Ct. Rec. 16 at p. 6). The supreme court commissioner nonetheless dismissed the personal restraint petition, finding that Petitioner had failed to show that when viewing the totality of the evidence in the light most favorable to the State, that no rational trier of fact would have been justified in finding him guilty beyond a reasonable doubt. Petitioner subsequently filed a motion seeking to modify the commissioner's ruling. On April 4, 2007, the Washington Supreme Court issued an order denying the motion and on April 5, issued a "Certificate Of Finality."

Petitioner filed another personal restraint petition with the Washington Supreme Court on March 14, 2007, again challenging the sufficiency of the evidence for his convictions. On September 27, 2007, a state supreme court commissioner issued a "Ruling Granting Motion To Strike And Dismissing Personal Restraint Petition." In addition to granting the State's motion to strike certain exhibits which the Petitioner submitted in support of his personal restraint petition, the commissioner dismissed the petition as untimely because it was not

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 3**

filed within one year after his judgment and sentence became final.

## II.  DISCUSSION

### A.  Double Jeopardy Claim

Petitioner's §2254 Petition raises a single ground for relief, that being there was insufficient evidence to support Petitioner's convictions for First Degree Assault.  State court remedies with regard to this ground for relief have properly been exhausted.  In a "Supplemental Answer" filed with the court, the Respondent acknowledged as much and addressed the merits of the single ground for relief asserted in the Petition.  The court directed Petitioner to serve and file a reply brief regarding the merits.

In his reply brief, Petitioner presents an additional ground for relief which was not included in his §2254 Petition.  Petitioner asks that this court "rule that the one discharge of the weapon during an argument be considered a single offense and all charges stemming from the incident as one criminal act."  The court will not consider this ground for relief as it was not set forth as a ground for relief in the Petition.  Rule 2(c)(1) of *Rules Governing Section 2254 Cases In The United States District Courts* ("The petition must . . . specify all the grounds for relief available to the petitioner").  "A Traverse is not the proper pleading to raise additional grounds for [habeas] relief."  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).  Petitioner has not moved to amend his Petition.

In any event, to the extent Petitioner suggests he has some type of federal constitutional claim regarding this ground for relief (i.e., double jeopardy claim premised on Fifth and Fourteenth Amendments), the record shows that Petitioner did not present such a claim to the state courts and he is now procedurally barred from doing so.  A claim is considered exhausted when it has been fully and fairly presented to the state supreme court for resolution under federal constitutional law.  *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276 (1982).  Exhaustion

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 4**

1  requires a petitioner to have raised the claim in the state's highest court as a

2  federal claim, not merely as a state law equivalent of that claim. *Duncan v. Henry*,

3  513 U.S., 364, 365-66, 115 S.Ct. 887 (1995).

4        At his re-sentencing in February 2003, the Walla Walla County Superior

5  Court imposed two consecutive sentences for the Petitioner's first degree assault

6  convictions, and concurrent sentences for his second degree assault convictions.

7  On appeal, Petitioner contended the trial court erred in imposing consecutive

8  sentences based on the existence of separate victims.  The Washington Court of

9  Appeals affirmed the sentences in a decision filed April 22, 2004.  The court of

10  appeals noted that under state law, the doctrine of collateral estoppel does not

11  apply to re-sentencing after reversal of the original sentence.  Thus, the collateral

12  estoppel doctrine did not preclude imposition of consecutive sentences on

13  Petitioner's re-sentencing, even though the trial court had imposed four concurrent

14  sentences during the original sentencing.  Furthermore, the court of appeals found

15  under state law that because the two first degree assault convictions involved

16  separate victims, the "same criminal conduct" was not involved in each offense

17  and therefore, imposition of consecutive sentences was appropriate because each

18  conviction involved a "separate and distinct" crime.  (Ex. 16 to Ct. Rec. 15).  As

19  noted above, the state supreme court subsequently denied the Petitioner's petition

20  for discretionary review without comment in an order dated January 4, 2005.

21        Petitioner did not properly exhaust this as a federal constitutional claim in

22  state court and he is now barred from doing so by virtue of a mandatory rule of

23  state procedure, specifically RCW 10.73.140 which prohibits the filing of

24  successive collateral challenges.  ("If a person has previously filed a petition for

25  personal restraint petition, the court of appeals will not consider the petition unless

26  the person certifies that he or she has not filed a previous petition on similar

27  grounds, and shows good cause why the petitioner did not raise the new grounds

28  in the previous petition").  See also Washington Rules of Appellate Procedure

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 5**

16.4(d)("No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown").

Because Petitioner cannot file a second personal restraint petition raising a federal constitutional double jeopardy claim, this federal court is procedurally barred from reviewing such a claim, absent a showing of cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546 (1991); *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Cause may be demonstrated by showing that "some objective factor external to the defense" prevented Petitioner from complying with state procedural rules relating to presentation of his claims. *McCleskey v. Zant*, 499 U.S. 467, 493-94, 111 S.Ct. 1454 (1991). There is no apparent "objective factor external to the defense" which would have precluded Petitioner from including a federal constitutional double jeopardy claim in the personal restraint petition which he previously filed with the state supreme court and which presented the federal constitutional claim regarding alleged insufficiency of evidence.

## B. Insufficiency Of Evidence Claim

A conviction must be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n. 16. All conflicting inferences are presumed to have been resolved in favor of the prosecution. *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000)(en banc).

A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm, assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death. RCW

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 6**

9A.36.011(1)(a).  Specific intent is an element.  The State must prove a defendant intended to inflict great bodily harm.  *State v. Thomas*, 123 Wn.App. 771, 779, 98 P.3d 1258 (2004).  "Great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss of impairment of the function of any bodily part or organ."  RCW 9A.04.110(4)(c).

Petitioner contends the evidence presented at his trial was insufficient for any rational trier of fact to conclude that he intended to inflict great bodily harm on Jose Corona, Sr., and Jose Corona, Jr.[3]  According to Petitioner, the trial testimony of Jose Corona, Sr., and Refugio Chavez was that although Petitioner initially pointed a gun at Jose Corona, Sr., the Petitioner then fired the gun away from Jose Corona, Sr. (fired five or six feet away from Corona, Sr.; fired into the yard).  Petitioner asserts there was no testimony that he actually fired the gun at Corona, Sr., and therefore, no rational trier of fact could have concluded he intended to inflict great bodily harm on Corona, Sr.

Petitioner asserts the evidence presented at trial showed that Jose Corona, Jr., was standing on the porch of his aunt's (Maria Guadulupe Rodriguez's)  house when the gun was fired and that considering where the slug hit the ground in relation to where Corona, Jr., was standing, no rational trier of fact could have concluded that Petitioner intended to inflict great bodily harm on Corona, Jr.  In fact, Petitioner asserts the evidence establishes that he did not even see Corona, Jr. on the porch when he [Petitioner] fired the gun.

At trial, Jose Corona, Sr., testified he was at the home of his sister, Maria Guadulupe Rodriguez on the day of the incident (September 11, 1999).  His nephew, Ramon Herrera, came running into the house to advise that Corona's

---

[3]  Defendant was convicted of second degree assault with respect to Elizabeth Corona and Ramon Herrera.

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 7**

brother, Juan, was being beaten up outside by the Petitioner and another man. Corona said he ran outside and confronted the Petitioner and that Defendant then told Corona that he [the Petitioner] was going to retrieve his pistol. According to Corona, he then saw the Defendant "running with the pistol in his hand and shouting at me he was going to kill me." Corona said he then tried to grab his children, Jose Corona, Jr., and Elizabeth, who were outside at the time, in an attempt to get them out of the way of harm. Corona testified he got the children onto the porch of his sister's house when he saw the Defendant fire the weapon. He testified that Petitioner pointed the weapon at him but the bullet landed in the yard five or six feet away from him. (Tr. at pp. 130-154, Ex. 28 to Ct. Rec. 15).

Ramon Herrera corroborated the testimony of Corona, that Petitioner stated he intended to shoot Corona and that Petitioner pointed the weapon at Corona. (*Id.* at pp. 159, 161 and 162). Refugio Chavez, a neighbor of Maria Guadulupe Rodriguez, testified that he witnessed the incident. Chavez said he saw the Petitioner retrieve the pistol, point it at Corona and say he intended to kill him. According to Chavez, the children of Corona were in the yard outside the home of his sister at the time of the incident. Chavez testified that Petitioner discharged a single shot which landed in the yard. He further testified that at the time the shot was fired, Corona had managed to gather his children onto the porch of his sister's house. (*Id.* at pp. 237-38). Maria Guadulupe Rodriguez testified she heard Petitioner say he was going to retrieve his pistol and kill Corona. (*Id.* at p. 249).

Viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of first degree assault beyond a reasonable doubt, namely that Petitioner had the specific intent to inflict great bodily harm. Although the evidence indicates Petitioner specifically stated he intended to shoot and kill Jose Corona, Sr., there was sufficient evidence for the jury to convict the Petitioner of first degree assault upon Jose Corona, Jr. Per *State v, Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994):

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 8**

> The mens rea for [first degree assault] is the "intent to inflict great bodily harm." Assault in the first degree requires a specific intent; but it does not, under all circumstances, require that the specific intent match a specific victim. Consequently, once the intent to inflict great bodily harm is established, usually by proving that the defendant intended to inflict great bodily harm on a specific person, the mens rea is transferred under RCW 9A.36.011 to any unintended victim.

In his "Opening Brief" (Ct. Rec. 4), Petitioner contends there was insufficient evidence to convict him of second degree assault, although second degree assault was not specifically mentioned in his Petition. Only the first degree assault convictions are specifically challenged in the Petition. In any event, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have also found the essential elements of second degree assault beyond a reasonable doubt, those being an assault with a deadly weapon upon Elizabeth Corona and Ramon Herrera. RCW 9A.36.021(1)(c). (See also Tr. at pp. 351-52, Jury Instructions Nos. 20, 21 and 22; Ex. 29 to Ct. Rec. 15). Evidence was presented from which a rational trier of fact could have found that all of the children- Jose Corona, Jr., Elizabeth Corona, and Ramon Herrera- were in the immediate vicinity of where the shot was fired (i.e., on the porch of the house of Maria Guadalupe Rodriguez).[4]

In his "Reply Brief" (Ct. Rec. 26), Petitioner contends, for the first time,

---

[4]At trial, Petitioner testified that he was not the one who shot the weapon. Raul Montes testified on behalf of Petitioner that it was he (Montes) who shot the weapon. At the time of the shooting, the house of Maria Guadalupe Rodriguez was located next door to the house of Petitioner's father. Petitioner testified he was inside his father's house during the shooting and accordingly, there was no testimony from the Petitioner about the location of the children when the shot was fired. There is simply no evidence to support Petitioner's assertion that Jose Corona, Jr., was not visible when the shot was fired. Moreover, even if the child had not been visible, that would not necessarily preclude a first degree assault conviction as to the child.

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 9**

that "[n]one of the alleged victims . . . had the requisite fear and apprehension element of common law assault because after the alleged incident[,] the testimony showed that they went out to see what happened."  In support of this argument, Petitioner cites *State v. Nicholson*, 119 Wn.App.855, 84 P.3d 877 (2003).  Because Petitioner did not raise this argument in his opening brief and instead raises it for the first time in his reply brief, the Respondent has not had an opportunity to respond to the argument and normally, the court would disregard the argument for that reason.  In any event, Petitioner's argument is without merit.

The jury in Petitioner's case was given a separate instruction setting forth the three common law definitions of assault.  Instruction No. 6 (Tr. at pp. 344-45; Ex. 29 to Ct. Rec. 15) reads as follows:

> An assault is an intentional touching, striking, cutting, or shooting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person.  A touching, striking, cutting, or shooting is offensive, if the touching, striking, cutting, or shooting would offend an ordinary person who is not unduly sensitive.
>
> An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented.  It is not necessary that bodily injury be inflicted.
>
> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even if the actor did not actually intend to inflict bodily injury.[5]

In *State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007), the same instruction was given to a jury which convicted the defendant of three counts of second

---

[5] Page 344 is currently missing from the transcript supplied to the court.  It is apparent from the first paragraph contained on Page 345, however, that this is the instruction that was given.  The court has requested the Respondent to supplement the record with the missing Page 344.

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 10**

degree assault with a deadly weapon.  The defendant contended the common law definitions of assault constituted alternative means of committing the crime of assault in whichever degree charged and that in order to uphold the jury's unanimous verdict, there had to be substantial evidence in the record to support each of the three definitions if submitted together in one instruction.  The Washington Supreme Court found the definitional instructions did not create alternative means of committing the crime of second degree assault and therefore, defendant's constitutional right to a unanimous jury verdict was not violated.  As with Petitioner in the case at bar, the defendant in *Smith* contended the evidence did not support the "apprehension of harm" assault definition.  *Id*. at 782, n. 3.

The state supreme court noted that alternative means crimes are ones that provide that the proscribed criminal conduct may be proved in a variety of ways and that, as a general rule, such crimes are set forth in a statute stating a single offense, under which are set forth more than one means by which the offense may be committed.  Criminal assault is such a crime.  *Id*. at 784.  Thus, the second degree criminal assault statute articulates a single criminal offense and then provides six separate subsections by which the offense may be committed.  RCW 9A.36.021(1)(a)-(f).  Each of the six subsections represents an alternative means of committing the crime of second degree assault.  *Id*.  The first degree criminal assault statute articulates a single criminal offense and then provides three separate subsections by which the offense may be committed.  RCW 9A.36.011(1)(a)-(c).  Each of the three subsections represents an alternative means of committing the crime of first degree assault.

The state supreme court noted that in *State v. Linehan*, 147 Wn.2d 638, 56 P.3d 542 (2002), it had stated that the alternative means of committing criminal assault are not provided for in the common law definitions, but rather "are provided in the statutes delineating the degree of assault."  *Smith*, 159 Wn.2d at 876, quoting *Linehan*, 147 Wn.2d at 646.  According to the court:

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 11**

1
2
3
4
5

> As applied to the criminal assault charging statutes, the common law assault definitions merely elaborate upon and clarify the terms "assault" or "assaults," which are used throughout chapter 9A.36 RCW.  Therefore, consistent with our prior jurisprudence, we decline to extend the reach of the alternative means doctrine beyond those statutory alternatives already directly provided for by the legislature in the assault charging statutes to encompass the common law assault definitions when submitted as a separate definitional instruction.

6

*Id*. at 877.

7
8

In arriving at this conclusion, the state supreme court specifically

9

disapproved of a number of previous court of appeals decisions, **including *State v.***

10

***Nicholson***, "to the extent those cases can be read as endorsing a hard and fast rule

11

that the common law definitions of assault constitute alternative means of

12

committing assault, thereby requiring substantial evidence to support each of the

13

alternative means charged or instructed."  *Id*.

14

The second reason the state supreme court gave for holding that common

15

law definitions of assault, when submitted in a jury instruction, do not constitute

16

alternative means of committing assault, is that the definitions merely define an

17

element of the crime charged, specifically the element of "assault."  *Id*. at 877-78.

18

See also *Wilson*, 125 Wn.2d at 217-18 ("assault" is not defined in the criminal

19

code and therefore, Washington courts turn to the common law for its definition

20

and there are three such definitions: 1) an attempt, with unlawful force, to inflict

21

bodily injury upon another (attempted battery); 2) an unlawful touching with

22

criminal intent (actual battery); and 3) putting another in apprehension of harm

23

whether or not the actor intends to inflict or is capable of inflicting the harm

24

(common law assault)).

25

The *Smith* court noted the State had not alleged that Smith had committed

26

second degree assault by more than one of the means listed in RCW 9A.36.021(1).

27

Instead, the record plainly showed the jury was instructed on only one means of

28

committing second degree assault: assault of another with a deadly weapon under

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 12**

RCW 9A.36.021(1)(c).  Because separate means of committing the crime were not charged or submitted to the jury, *Smith* was not an alternative means case and the duty to determine whether sufficient evidence existed to support each separate means presented to the jury was not triggered.  *Smith*, 159 Wn.2d at 790.  Because the jury returned a unanimous guilty verdict on the three offenses of second degree assault with a deadly weapon, Smith's constitutional right to a unanimous jury verdict was neither implicated nor compromised and the state supreme court did not need to determine whether the evidence was insufficient to support her three convictions under each of the three alleged alternative definitional means of committing assault.  *Id*. at 792.[6]

In the case at bar, the Petitioner was charged with four counts of first degree assault, specifically assault with intent to inflict great bodily harm by means of a firearm likely to produce great bodily harm or death.  RCW 9A.36.011(1)(a).  This is the attempted battery variety of criminal assault.  The jury was instructed that "[a] person commits the crime of assault in the first degree when, with intent to inflict great bodily harm, he she assaults another with a firearm."  (Instruction No. 7; Tr. at p. 345; Ex. 29 at Ct. Rec. 15).  The jury was instructed that in order to convict the Petitioner of first degree assault, four elements had to be proven beyond a reasonable doubt: 1) that the Petitioner assaulted the named victim; 2) that the assault was committed with a firearm; 3) that the Petitioner acted with intent to inflict great bodily harm; and 4) that the acts occurred in Walla Walla County.  The jury was not instructed that it had to find that any of the named victims suffered reasonable apprehension and properly so, considering the type of

---

[6]This court notes that the holding in *Smith* is consistent with the state supreme court's prior decision in *State v. Stewart*, 73 Wn.2d 701, 440 P.2d 815 (1968), wherein the court found that the apprehension of one assaulted is not a necessary element of first or second degree assault.

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 13**

first degree assault charged under the statute involved attempted battery and not common law assault.  (Instruction Nos. 11-14; Tr. at pp. 345-48; Ex. 29 at Ct. Rec. 15).

The jury was also instructed on the elements of second degree assault because "[t]he crime of assault in the first degree necessarily includes the lesser crime of assault in the second degree."  (Instruction No. 16; Tr. at p. 349; Ex. 29 at Ct. Rec. 15).  The jury was instructed that "[a] person commits the crime of assault in the second degree when under circumstances not amounting to assault in the first degree he assaults another with a deadly weapon."  (Instruction No. 17; Tr. at p. 349; Ex. 29 at Ct. Rec. 15).  The jury was instructed that in order to convict the Petitioner of second degree assault, two elements had to be proven beyond a reasonable doubt: 1) the Petitioner assaulted the named victim with a deadly weapon and 2) the act occurred in Walla Walla County.  (*Id*. at pp. 349-52).  The jury was not instructed that it had to find that any of the named victims suffered reasonable apprehension and properly so, considering the type of second degree assault at issue under the statute (RCW 9A.36.021(1)(c)) involved attempted battery and not common law assault.

As in *Smith*, the record in the case at bar plainly shows the jury was instructed on only one means of committing first degree assault (assault with a firearm likely to produce great bodily harm or death under RCW 9A.36.011(1)(a)), and one means of committing second degree assault (assault of another with a deadly weapon under RCW 9A.36.021(1)(c)).  Separate means of committing these crimes were not charged or submitted to the Petitioner's jury.  Like *Smith*, the case at bar was not an alternative means case and the duty to determine whether sufficient evidence exists to support each separate means presented to the jury is not triggered.  The jury returned a unanimous guilty verdict on two counts of first degree assault as to Jose Corona, Sr., and Jose Corona, Jr..  There was sufficient evidence to establish beyond a reasonable doubt that Petitioner assaulted

**ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS- 14**

these victims with a firearm likely to produce great bodily harm or death.  The jury returned a unanimous guilty verdict on two counts of second degree assault as to Elizabeth Corona and Ramon Herrera.  There was sufficient evidence to establish beyond a reasonable doubt that Petitioner assaulted these victims with a deadly weapon.

In sum, based on *Smith*, even if it is assumed there was insufficient evidence presented to establish that the victims of the assault did not experience reasonable apprehension and imminent fear of bodily injury, the jury was presented with sufficient evidence to convict Petitioner of first degree assault and second degree assault based on the specific type of first degree assault and the specific  type of second degree assault on which the jury was instructed (attempted battery).  As in *Smith*, it is not necessary to determine whether the evidence was insufficient to support Petitioner's convictions under each of the three alleged alternative definitional means of committing assault (attempted battery, battery and common law assault).

## III.  CONCLUSION

For all of the foregoing reasons, Petitioner's §2254 Petition (Ct. Rec. 1) is **DENIED**.

**IT IS SO ORDERED**.  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to the Petitioner and to counsel for the Respondent.

**DATED** this   11th   of June, 2008.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS- 15**